IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CLIFFORD ADDERLY, et al.,

  Plaintiffs,

    v.

CITY OF ATLANTA, GEORGIA,

  Defendant.

CIVIL ACTION FILE
NO. 1:08-CV-2111-TWT

ORDER

This is a case brought under the Fair Labor Standards Act ("FLSA"). It is before the Court on the Defendant's Motion to Dismiss [Doc. 3]. For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

I. Introduction

The Plaintiffs are current and former employees of the Defendant City of Atlanta's Department of Corrections. The Complaint alleges that the Plaintiffs are "similarly situated . . . non-FLSA exempt employees," but does not specify the Plaintiffs' job descriptions in any detail. (Compl. ¶ 1). They are described as "sworn officers, holding various rank ordered positions." (Compl. ¶ 1). The only other hint as to their duties is the allegation that they all "perform valuable, difficult, and dangerous work as public servants on behalf of the citizens of Atlanta." (Compl. ¶ 2).

At the crux of the Complaint is the claim that the City has failed to pay overtime compensation, in the form of cash payments, at a rate of one and one-half times their hourly rate of pay. (Compl. ¶ 2). Instead, the Plaintiffs allege that the City provides overtime payment in the form of compensatory time off. The Plaintiffs further complain that the City provides this "comp time" only at a one-to-one ratio, and not at a rate of one and one-half hours for each overtime hour. (Compl. ¶ 99). The Plaintiffs allege that the City provided comp time in lieu of cash overtime payments: 1) in absence of any agreements with the Plaintiffs authorizing comp time; and 2) under protest from the Plaintiffs. (Compl. ¶¶ 94, 66). The Plaintiffs also allege that the City forces the Plaintiffs to use comp time instead of accrued sick leave. (Compl. ¶ 74). Allegedly, the resulting harm is that at the termination of employment, unused sick leave is forfeited. (Id.) The City has chosen to cap accumulated comp time at 160 hours; after that cap has been reached, the City must compensate for overtime work with cash payments. Finally, the Plaintiffs allege that the City does not compensate as overtime for such activities as "arriving early, as is required by the Department, at the work-site to commence work and/or leaving the worksite late in order to complete work; training functions and activities; employment and work activities while in training; and up-keep and maintenance of equipment and property." (Compl. ¶ 84). The City now moves to dismiss for failure to state a claim.

## II. Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1965-66 (2007); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Twombly, 127 S. Ct. at 1965 (citations and quotations omitted). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citing Twombly, 127 S. Ct. at 1964).

III. Discussion

A.  § 207(k) Claims

In general, the FLSA mandates that employers must pay their employees "time-and-a-half" overtime pay for all work performed in excess of forty hours per week. 29 U.S.C. § 207(a)(1); Falken v. Glynn County, 197 F.3d 1341, 1345 (11th Cir. 1999). The Defendant argues that the Plaintiffs' claims for overtime compensation are precluded by the partial exemption to the FLSA overtime requirement provided in 29 U.S.C. § 207(k), commonly referred to as the 7(k) exemption. The Plaintiffs conversely contend that the City has not satisfied the 7(k) exemption requirements and, therefore, is subject to the general provisions of the FLSA. The 7(k) exemption exists for public agencies whose employees are engaged in either fire protection services or law enforcement activities. Specifically, the 7(k) exemption states:

> No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of any employee in fire protection activities or any employee in law enforcement activities (including security personnel in correctional institutions) if – (1) in a work period of 28 consecutive days the employee receives for tours of duty which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary pursuant to Section 6(c)(3) of the Fair Labor Standards Amendments of 1974) in tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975; or (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 hours (or if

> lower, the number of hours referred to in clause (B) of paragraph (1))
> bears to 28 days, compensation at a rate not less than one and one-half
> times the regular rate at which he is employed.

29 U.S.C. § 207(k). The United States Department of Labor by regulation has reduced the standard for the 28 day work period from 216 hours to 171 hours for law enforcement employees. 29 C.F.R. § 553.201.

The burden is on the employer to show that it is entitled to the 7(k) exemption. Jones v. City of Columbus, 120 F.3d 248, 252 (11th Cir. 1997); Wouters v. Martin County, 9 F.3d 924, 929 (11th Cir. 1993); O'Neal v. Barrow County Board of Comm'rs, 980 F.2d 674, 677 (11th Cir. 1993). Overtime exemptions from § 207 should be narrowly construed against the employer. Birdwell v. City of Gadsden, 970 F.2d 802, 805 (11th Cir. 1992). The employer must meet this burden by showing that it has adopted a work period of between seven and 28 days for employees who are engaged as security personnel in correctional institutions. 29 U.S.C. § 207(k).

The Defendant argues that the Plaintiffs are covered under the 7(k) exemption because they are public safety officers employed as "security personnel in correctional institutions." The Plaintiffs contend that the Defendant has not met its threshold burden of showing that the Plaintiffs are covered under the Act. The Defendant points out that the Plaintiffs admit to being "sworn officers" performing "difficult and dangerous" duties. However, the Plaintiffs specifically allege that they are non-

exempt employees under the FLSA. (Compl. ¶ 2). The applicable regulations flesh out the dichotomy between those that are "security personnel in correctional institutions" and those who are not with specificity:

> Employees of correctional institutions who qualify as security personnel for purposes of the section 7(k) exemption are those who have responsibility for controlling and maintaining custody of inmates and of safeguarding them from other inmates or for supervising functions, regardless of whether their duties are performed inside the correctional institution or outside the institution (as in the case of road gangs). These employees are considered to be engaged in law enforcement activities regardless of their rank . . . of or their status as "trainee," "probationary," or "permanent, " and regardless of their assignment to duties incidental to the performance of their law enforcement activities, or to support activities of the type described in paragraph (g) of this section, whether or not such assignment is for training or familiarization purposes or for reasons of illness, injury, or infirmity.
>
> (g) Not included in the term "employee in law enforcement activities" are the so-called "civilian" employees of law enforcement agencies or correctional institutions who engage in such support activities as those performed by dispatcher, radio operators, apparatus and equipment maintenance and repair workers, janitors, clerks, and stenographers. Nor does the term include employees in correctional institutions who engage in building repair and maintenance, culinary services, teaching, or in psychological, medical, and paramedical services [regardless if the employees] come into regular contact with the inmates in the performance of their duties.

29 C.F.R. § 553.211 (f)-(g).

The Complaint appears to be deliberately vague as to the Plaintiffs' job duties and responsibilities. As stated, the Defendant carries the burden to show that the employees are exempt. Some clues may be gleaned about the Plaintiffs'

responsibilities from the public record. The City's code defines a sworn officer as "an employee in the department of corrections who is certified as a detention officer by the Georgia Peace Officer Standards and Training Council (POST) and occupies a designated sworn position." ATLANTA, GA., CODE § 114-227. Georgia law states that peace officers trained by the POST Council include "[p]ersonnel who are authorized to exercise the power of arrest and who are employed or appointed by the Department of Corrections, the State Board of Pardons and Paroles, municipal correctional institutions employing 300 or more correctional officers, county probation systems, and county correctional institutions." O.C.G.A. § 35-8-2. Thus, it would appear that sworn correctional personnel are security personnel because of their arrest power (inherently providing the power to control or maintain custody per the regulations), except that § 35-8-2(D) contains a caveat: "Law enforcement support personnel are not peace officers within the meaning of this chapter, but they may be certified upon voluntarily complying with the certification provisions of this chapter." Id. Consequently, a member of the support staff can obtain certification by the POST Council as required by Section 114-227 of the Atlanta code without becoming a peace officer. The most logical interpretation of the legislation is that sworn correctional personnel are "peace officers" because certification under § 35-8-2(D) is voluntary, and the code requires sworn employees in the department of corrections to be certified

as peace officers. However, the Court must be mindful that the FLSA exemptions are to be narrowly construed against the employer. And these materials are outside of the pleadings.

Further confusion as to the Plaintiffs' duties stems from a human resources memorandum introduced by the Defendant discussing the City's policies toward overtime. The memorandum discusses, among other things, the compensation requirements for so called "Sworn, nonexempt employees in the departments of Corrections and Police." (Reply Br. in Supp. of Def.'s Mot. to Dismiss, Ex. 1, at 2). Therefore, the fact that the Plaintiffs are all sworn is not dispositive as the memorandum defines nonexempt employees as "[e]mployees covered [or protected] under Fair Labor Standards Act regulations, including minimum wage and overtime pay requirements." (Id.) It is worth noting that public employees discussed in § 207(k) are, in FLSA parlance, known as "partially exempt" employees. Huff v. DeKalb Co., 516 F.3d 1273, 1278 n.5 (11th Cir. 2008) ("Section 207(k) is actually a partial exemption, since it extends the permissible non-overtime workweek, instead of doing away with it entirely."). Although this could provide a basis for "nonexempt" employees to be excluded from FLSA protections, the Court cannot say as a matter of law that the nonexempt, sworn employees described in the memorandum are not protected from § 207(k). See Freeman v. City of Mobile, 146

F.3d 1292, 1295 (11th Cir. 1998) ("Although the Personnel Board has ... required overtime pay for 'non-exempt' City employees, it has not adopted any Rule specifying those positions which it understands to be exempt from the FLSA."). Since the Plaintiffs have pled that they are nonexempt from § 207(k) and the public record is inconclusive as to the Plaintiffs' duties, the Defendant has not met its burden of showing the § 207(k) exemption applies.

Even supposing that the Defendant established that §207(k) applies to the Plaintiffs, it is not proper to dismiss this suit at this stage. In its Reply Brief, the City introduced a 2003 human resources memorandum, which stated that "[s]worn public safety employees will have a recurring 28-day established work period" and "sworn, nonexempt employees in the departments of Corrections and Police must be compensated at the overtime rate for hours actually worked in excess of 171 hours in any established 28-day work period." (Reply Br. in Supp. of Def.'s Mot. to Dismiss, Ex. 1, at 1-2). This policy was instituted nearly two years before the Plaintiffs' claim arose and continues in effect today. (Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 9). In light of Eleventh Circuit precedent finding that the 7(k) exemption is satisfied based on similar, and even lesser, evidence, this evidence could suffice to show that the City has adopted a 28 day, 212-hour work cycle for its sworn correctional officers. See, e.g., Freeman, 146 F.3d at 1297 (finding that city resolution, evidence of

fourteen-day payroll, and memorandum of police chief sufficient to fall within 7(k) exemption); Birdwell, 970 F.2d at 806 (affirming direct verdict that 7(k) exemption applied based on evidence that employees worked a regularly recurring period); Kermit C. Sanders Lodge No. 13, Fraternal Order of Police v. City of Smyrna, 862 F. Supp. 351, 355-56 (N.D. Ga. 1994) (finding city's policy statement and memorandum from police chief sufficient to show city established work period within 7(k) exemption). However, "[w]hether the employer has proved that he has adopted a 7(k) work period is a question for the jury." Birdwell, 970 F.2d at 805. The Defendant seeks to characterize Birdwell as a one-way ratchet towards finding a § 207(k) work period, highlighting the fact that the municipality had only raised the issue of a §207(k) work period during trial. However, the Birdwell court relied on at least one case that denied a municipality's summary judgment motion. Id. (citing Nixon v. Junction City, 707 F. Supp. 473, 479 (D. Kan. 1988)). The Plaintiffs should have "a chance to present evidence regarding the work period." Birdwell, 970 F.2d at 806. The Birdwell court did grant district courts latitude to grant summary judgment if the plaintiffs fail to present an issue of material fact. Id. at 806, n.2.

The principles espoused in Birdwell are especially appropriate here as the Defendant introduced its most probative evidence (and evidence that could satisfy its burden to show the application of § 207(k)) in its Reply Brief. In their Response

Brief, the Plaintiffs indicated that they would seek discovery of employment contracts between the parties, the Plaintiffs' work periods, and the notice and timing of the alleged adoption of § 207(k) work periods. (Pls.' Br. in Opp'n to Def.'s Mot. to Dismiss, at 19-22). It is possible, as the Defendant argues, that the human resources memorandum eviscerates the relevancy of such matters. And the memorandum - a tangible piece of the public record - is less susceptible to dispute than Birdwell, where the evidence of the 207(k) work period was in the form of a city's personnel director's testimony. Birdwell, 970 F.2d at 805. Nonetheless, the Court should not attempt to predict how the Plaintiffs might attack -- legally or factually -- such evidence, and they should have an opportunity to discover any conflicting evidence of the existence of the § 207(k) work period. Summary judgment and Rule 11 are the appropriate remedies if the Plaintiffs' case is as flimsy as the City contends that it is with respect to the applicability of the 7(f) exemption.

Additionally, dismissal of the case in its entirety is not appropriate because the Plaintiffs challenge the calculation of their hours. (Compl. ¶¶ 84; 70-73). The Plaintiffs allege that they were not properly compensated for such activities as "arriving early, as is required by the Department, at the work-site to commence work and/or leaving the worksite late in order to complete work; training functions and activities; employment and work activities while in training; and up-keep and

maintenance of equipment and property." (Compl. ¶ 84). According to the Plaintiffs, the City either: (1) failed to credit the Plaintiffs at all for these duties; or (2) failed to pay overtime (or comp time) for these off-the-clock duties. (Compl. ¶¶ 70-73). Because the Defendant did not specifically seek to dismiss these claims in its briefing, the Court need not now decide whether these off-the-clock activities constitute overtime work or are even compensable generally. Cf. Avery v. City of Talladega, 24 F.3d 1337, 1344 (11th Cir. 1994) ("The City concedes that the pre- and post-shift time at work constitutes 'time worked' under the FLSA" for law enforcement officers); Birdwell, 970 F.2d at 807 (determination of off-the-clock activities as work under FLSA depends upon whether time is predominantly for employer's benefit or for employee's).

The Court is mindful that it need not allow the § 207(k) claim's survival for a discovery frolic through the City's personnel records. See Cox v. Administrator U.S. Steel & Carnegie, 17 F.3d 1386, 1416-17 (11th Cir. 1994) ("no reason to permit . . . groundless fishing expeditions."). But dismissal is not appropriate here. First, the Court does not have a detailed account of the Plaintiffs' job duties and whether the § 207(k) exemption would apply to them. The Court could order, under Rule 12(e), for the Plaintiffs to make a more definite statement as to their job duties. Fed. R. Civ. P. 12(e). However, even supposing that such an order would show that the Plaintiffs are

partially exempt under §207(k), discovery will still be conducted in this case as the Plaintiffs have still stated a valid claim under § 207(o). The Court should not dismiss the § 207(k) claims.

B. § 207(o) Claims

The Defendant argues that there is no violation of § 207(o) because there was agreement that the Plaintiffs would be compensated for overtime work by compensatory time instead of cash overtime payments. The FLSA states that:

> Employees of a public agency which is a State, a political subdivision of a State, or an interstate governmental agency may receive, in accordance with the subsection and in lieu of overtime compensation, compensatory time off at a rate not less than one and one-half hours for each hour of employment for which overtime compensation is required by this section.

29 U.S.C. § 207(o)(1). In order to give comp time under the statute, the employer must arrive at an agreement or understanding with its employees. 29 U.S.C. § 207(o)(2). However, the Supreme Court's definition of an agreement or understanding encompasses informal ones, and even extends to where an employee merely has knowledge of the practice of giving out comp time. Christensen v. Harris County, 529 U.S. 576, 579 n.1 (2000) (citing 29 C.F.R. § 553.23(c)(1)).

The Defendant relies not only on Christensen, but also upon a Middle District of Georgia case, Smith v. Upson County, 859 F. Supp. 1504, 1509 (M.D. Ga. 1994), to support dismissal since the Plaintiffs were aware that comp time was given instead

of cash overtime payments. The Defendant specifically cites <u>Upson County</u> for the principle that there is an agreement "for purposes of section 7(o) with respect to any employee who fails to express to the employer an unwillingness to accept compensatory time off in lieu of overtime pay." <u>Id.</u> at 1509. Even adopting the legal standard the Defendant seeks, the Plaintiffs have stated a valid claim for a violation of § 207(o). The Complaint alleges that:

> Plaintiffs, individually and collectively (upon discovering that the City had failed to properly compensate them by way of cash overtime payments) complained to their supervisors and other City officials regarding same, and expressed their unwillingness to accept compensatory time off in lieu of cash overtime compensation.

(Compl. ¶ 66). Further, the Plaintiffs also allege (and the Defendant does not address) that the Defendant compensated the Plaintiffs at less than the time-and-a-half rate required under § 207(o). (Compl. ¶ 99). The § 207(o) claim should not be dismissed. Again, Rule 11 is the appropriate remedy if the Plaintiffs' case is in fact as flimsy as the City says that it is.

Additionally, the Defendant seeks to dismiss any allegation that "the City has established a cap on accumulation of compensatory hours that is less than the cap established in the regulations." (Def.'s Mot. to Dismiss, at 16). The Complaint alleges that the City's policy "explicitly . . . specif[ies] a maximum of accrual of compensatory time off (160 hours) which is in facial violation of § 207(o)'s requirement that employees be permitted to accrue up to 480 such hours." (Compl. ¶

57). The Defendant argues that this policy is actually a benefit, as it ensures that the Plaintiffs would be paid cash overtime earlier than is allowed under the FLSA. Arguably, this policy is a benefit, and "the City may choose to be more generous with its overtime pay than the FLSA allows." Freeman, 146 F.3d at 1297 n.3. More importantly, the Supreme Court has noted that an employer has the right to cash out accumulated comp time by paying the regular hourly wage for each hour accrued. Christensen, 529 U.S. at 580, 585. Setting a lower cap than the statutory maximum is no different than cashing out the comp time, since the City would have to pay overtime benefits in cash after 160 hours. This claim should be dismissed.

Finally, the City seeks dismissal of the Plaintiffs' claim that they were improperly forced to use their comp time instead of accumulated sick time. The City relies on a Fifth Circuit opinion holding that Louisiana did not violate correctional officers' FLSA rights by forcing them to use comp time ahead of vacation or annual leave. Local 889, American Federation of State, County, and Municipal Employees, Council 17 v. State of Louisiana, 145 F.3d 280, 285-86 (5th Cir. 1998). Importantly, the court found that there was no significant difference between the plaintiffs' earned comp time and their annual leave. Id. at 285. The only drawback to the employee, in that instance, was that the employee would not be able to accumulate comp time, so that his employer would be forced to pay cash overtime benefits sooner. Id. The Fifth

Circuit agreed with the trial judge who wrote that it would be improper for "employees to 'bank' [comp time] hours until they reached the statutory limit which would require cash compensation, [as] that result would . . . practically nullify the purpose of the statutory scheme." Id. at 286.

This case presents a slightly different issue because the Plaintiffs allege a more significant harm in this case. According to the Plaintiffs, sick leave is forfeited once one leaves their employment. On the other hand, an employee has the right to receive cash payments for his accrued comp time remaining when his employment terminates. Christensen, 529 U.S. at 580. Yet, the Plaintiffs do not guide the Court to any authority limiting the principles of Christensen. Although Christensen does not squarely address whether an employer can force its workers to take comp time in lieu of sick leave, it does make clear that § 207(o) "does not prohibit employers from forcing employees to use compensatory time." Id. at 585. Echoing the Fifth Circuit's view, the Christensen court was concerned about converting § 207(o)'s "shield into a sword, forcing employers to pay cash compensation instead of providing compensatory time." Id. at 585. Upholding the integrity of § 207(o) should override the Plaintiffs' concerns about not receiving their sick leave upon termination. In sum, the Plaintiffs' overarching § 207(o) claims should not be dismissed because there are disputes concerning: (1) the existence of an agreement regarding comp time to the

exclusion of cash overtime pay; and (2) the calculation of comp time. However, the Court should dismiss any § 207(o) claims challenging: (1) the City's cap on comp time hours that is lower than the statutory maximum; and (2) the forced use of comp time to the exclusion of sick leave.

IV. Conclusion

For the reasons set forth above, the Defendant's Motion to Dismiss [Doc. 3] is GRANTED IN PART and DENIED IN PART.

SO ORDERED, this 21 day of May, 2009.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge